**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| Rozette Azemar, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| Equifax Information Services, Llc; | ) | **COMPLAINT** |
| Experian Information Solutions, Inc.; | ) | **WITH JURY TRIAL DEMAND** |
| and Trans Union, Llc | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PRELIMINARY STATEMENT**

1.      The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S. Code § 1681, *et seq.* (the "FCRA") to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

2.      Under the FCRA, consumer reporting agencies are charged with two primary duties: the duty to follow reasonable procedures to assure maximum possible accuracy of information when preparing consumer reports; and the duty to reasonably reinvestigate consumers' disputes of inaccurate information, and then appropriately correct or modify the disputed information. A consumer reporting agency's duty to reasonably reinvestigate consumers' disputes of inaccurate information explicitly includes the duty to notify the furnisher of the disputed information. This is because the furnisher of the disputed information stands in a better position to make a thorough investigation of the disputed information than the credit reporting agency.

3.      Under the FCRA, furnishers of information have two similar primary duties: to report complete and accurate information regarding the consumers about whom the furnishers report; and, upon receiving notice of a consumer's dispute from a consumer reporting agency, to conduct an investigation of the disputed information, and then modify, delete, or permanently block the reporting of that information as appropriate.

4.      Defendants compile, maintain, and report information concerning Plaintiff's credit-worthiness, credit-standing, credit capacity, character, and general reputation. That information is then made available for use by third-parties in credit transactions involving Plaintiff, for employment purposes, the underwriting of insurance for Plaintiff, and even in connection with a determination of Plaintiff's eligibility for a license or other governmental benefit. Accordingly, and pursuant to various provisions of the FCRA, Plaintiff has a legally protected interest in Defendants fulfilling their respective duties under the FCRA, so that the information reported and maintained by Defendants is done so in a manner which is fair and equitable to Plaintiff, with regards to the confidentiality, accuracy, and relevancy of that information.

5.      This action for damages is based on Defendants' false reporting on Plaintiff's credit file and/or consumer reports, failures to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff, and failures to conduct reasonable investigations and reinvestigations with respect to disputes of such information.

## PARTIES

6.      Plaintiff, Rozette Azemar, is a natural person who resides in Broward County, Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7.      Defendant, Equifax Information Services, LLC (hereinafter "Equifax"), is a limited liability company formed under the laws of the State of Georgia and registered to do

business in the State of Florida. Equifax may be served with process via its registered agent, Corporation Service Company, at 1201 Hays Street, Tallahassee, FL 32301.

8.      Defendant, Experian Information Solutions, Inc. (hereinafter "Experian"), is a corporation that was incorporated in the State of Ohio and registered to do business in the State of Florida. Experian may be served with process via its registered agent, CT Corporation System, at 1200 South Pine Island Rd, Plantation, FL 33324.

9.      Defendant, Trans Union, Llc ("TransUnion"), is a limited liability company formed under the laws of the State of Delaware and registered to do business in the State of Florida. TransUnion may be served with process via its registered agent, Corporation Service Company, at 1201 Hays Street, Tallahassee, FL 32301.

10.     Equifax, Experian and TransUnion regularly assemble and/or evaluate consumer credit information for the purposes of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports. Accordingly, they are "consumer reporting agency(ies)" or "CRAs" as that term is defined by 15 U.S.C. § 1681a(f).

## JURISDICTION AND VENUE

11.     This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

12.     Pursuant to 28 U.S.C. § 1391, venue is proper in the Southern District of Florida because a substantial part of the events or omissions giving rise to the claims occurred here.

## ALLEGATIONS OF FACT

13.     In December 2023, Plaintiff applied for a mortgage loan to finance the purchase of new personal, residential home.

14.     Plaintiff was denied the loan due to several derogatory, inaccurate tradelines that appeared on her credit reports with Equifax, Experian and Trans Union.

15.     On her Equifax report were tradelines listed by Westgate Resorts LTD, JPMCB Auto Finance, Capital One, MOHELA and AES and inquiries by LoanDepot, Cardinal Finance and Rocket Mortgage.

16.     On her Experian report were tradelines listed by Westgate Resorts LTD, JPMCB Auto Finance, Capital One, MOHELA, AES and inquiries by LoanDepot, Cardinal Finance and Rocket Mortgage.

17.     On her Trans Union report were tradelines listed by Capital One, JPMCB Auto Finance, National Credit Systems, MOHELA and inquiries by LoanDepot, Cardinal Finance and Rocket Mortgage.

A.  **Westgate Resorts LTD.**

18.     In May 2021, Ms. Azemar attended a time-share event to hear about the prospect of purchasing a timeshare with Westgate.

19.     In making its presentation Westgate presented the price and costs for the timeshare in a false, misleading and deceptive manner.

20.     Specifically, Westgate represented that the price/cost disclosed during the presentation was the total cost for the time-share, including maintenance fees.

21.     This representation was false for Ms. Azemar would learn—after she purchased the time-share—that the price/cost did not include the maintenance fees.

22.     Ms. Azemar purchased the time-share based on the information presented during Westgate's presentation.

23.     If Westgate had not made misrepresentations and omissions during its presentation, Ms. Azemar would not have purchased the time-share.

24.     Ms. Azemar made timely payments to her account for 14 months.

25.     After making 14 months of payments, Ms. Azemar attempted to use her timeshare.

26. This is when she learned that Westgate misrepresented the cost of the timeshare.

27. Westgate informed Ms. Azemar that she had an overdue bill for the maintenance fees *and* that she could not use the timeshare *until* she paid the maintenance fees.

28. After Westgate refused to honor its original statements during the presentation and would not permit Ms. Azemar to use the timeshare until she paid the priorly undisclosed maintenance fees, Ms. Azemar stopped paying Westgate.

29. Westgate reported Ms. Azemar's non-payments to Equifax and Experian.

30. However, Westgate did not report the reasons for Ms. Azemar's non-payment.

31. Westgate's reporting is incomplete because it does not include the mitigating information—which are the reasons why Ms. Azemar stopped paying on the debt—concerning the circumstances of the non-payment.

32. Further, instead of reporting Ms. Azemar's timeshare loan as an installment loan, which is how timeshares are customarily reported, Westgate is reporting Ms. Azemar's timeshare account as a mortgage loan account.

33. Westgate's reporting is inaccurate and/or misleading because it is reporting the time-share debt as a mortgage account instead of an installment account.

34. Due to Westgate's improper reporting of the loan type—reporting the timeshare loan as a mortgage loan instead of an installment loan—Ms. Azemar is unable to qualify for a mortgage loan to purchase a primary resident that she desperately seeks.

35. Plaintiff informed Equifax and Experian of the inaccuracies with the Westgate tradeline and in turn, they informed Westgate of the inaccuracies.

36. Westgate responded to Plaintiff's dispute by instructing the CRAs to continue reporting the Westgate tradeline without making any corrections.

37.     The CRAs accepted Westgate's response without considering the information in Plaintiff's dispute and continued reporting the Westgate tradeline without making any corrections.

38.     Had the CRAs conducted a reasonable investigation they would have discovered that the Westgate tradeline contained inaccuracies, that the Westgate tradeline was incomplete, and that Westgate was unreliable in its reporting of this tradeline.

**B.  JPMCB Auto Finance.**

39.     Equifax and Trans Union are reporting a JPMCB Auto Finance tradeline on Plaintiff's credit reports.

40.     Plaintiff does not know if Experian is reporting the JPMCB Auto Finance tradeline because, unlike Equifax and Trans Union, Experian did not provide Plaintiff with her report after she requested it from Experian.

41.     The current payment status being reported for the JPMCB Auto Finance account by Equifax and Trans Union is inaccurate.

42.     Although the current status of the account is paid, both Equifax and Trans Union are reporting that current status as past due.

43.     Equifax and Trans Union know, or at least should know, that the pay status should be reported as currently paid because Plaintiff's credit file contains information that reflects the account is currently paid.

44.     Additionally, Equifax and Trans Union is not reporting Plaintiff's final payment in the payment history section of her reports.

45.     Instead of reflecting the account as paid in the final month of the payment history, the account is being reported that it was past due in the final month.

46.     Plaintiff informed the CRAs of the inaccuracies with JPMCB tradeline and in turn, the CRAs informed JPMCB of the inaccuracies.

47.     JPMCB responded to Plaintiff's dispute by instructing the CRAs to continue reporting the JPMCB account without making any corrections.

48.     The CRAs accepted JCMB's response without considering the information in Plaintiff's dispute and continued reporting JPMCB tradeline without making any corrections.

49.     Had the CRAs conducted a reasonable investigation they would have discovered that JPMCB tradeline contained inaccuracies, that the JPMCB tradeline was incomplete, and that JPMCB was unreliable in its reporting.

50.     Had the CRAs accurately reported the results of a reasonable investigation, CRAs would not have accepted and parroted JPMCB's response to Plaintiff's dispute.

C. **National Credit Systems.**

51.     Trans Union is reporting that Plaintiff has a collection account with an amount owed of $4,917 that is held by debt collector, National Credit System (or "NCS").

52.     NCS claims that Plaintiff originally owed this debt to EDU LEND LLC.

53.     Plaintiff has no record of ever owing a debt to EDU LEND LLC.

54.     Trans Union is reporting that NCS obtained the account in August 2017.

55.     NCS is a debt collector and would have obtained the loan after a default.

56.     Therefore, the purported debt with EDU LEND LLC occurred before NCS obtained the debt in August 2017.

57.     In normal circumstances, a debt collector is not assigned a debt until the debt has been in default for at least six months.

58.     Since NCS obtained the purported debt in August 2017, the purported debt would have gone into default in or around February 2017.

59.     A debt that has been in default since February 2017 is obsolete or older than seven years, which is too old to include on a consumer report.

60.     Trans Union is hiding the true age of the debt by omitting the complete payment history for the debt and omitting the date of first delinquency.

61.     Plaintiff informed Trans Union of the inaccuracies and incompleteness with the NCS collection and in turn, Trans Union informed NCS of Plaintiff's dispute.

62.     NCS responded to Plaintiff's dispute by instructing Trans Union to continue reporting the NCS collection without making any corrections.

63.     Trans Union accepted NCS's response without considering the information in Plaintiff's dispute and continued reporting NCS collection without making any corrections.

64.     Had Trans Union conducted a reasonable investigation it would have discovered that NCS collection was inaccurate and incomplete, or that it was unverifiable, and that NCS was unreliable in its reporting.

65.     Had Trans Union reported the accurate results of a reasonable investigation, Trans Union would not have accepted and parroted NCS's response to Plaintiff's dispute.

**D. MOHELA.**

66.     The CRAs are reporting 7 student loan accounts with MOHELA as being late in June, July or August of 2018.

67.     In the summer of 2018, including the months of June through August 2018, the Plaintiff's student loan accounts with MOHELA were in forbearance.

68.     Therefore, the Plaintiff was not late in June 2018, July 2018 and August 2018.

69.     Plaintiff informed the CRAs of the inaccuracies and incompleteness with the MOHELA student loan accounts, and in turn, the CRAs informed MOHELA of Plaintiff's dispute.

70.     MOHELA responded to Plaintiff's dispute by instructing the CRAs to continue reporting the MOHELA student loan accounts without making any corrections.

71.     The CRAs accepted MOHELA's response without considering the information in Plaintiff's dispute and continued reporting the MOHELA student loan accounts without making any corrections.

72.     Had the CRAs conducted a reasonable investigation it would have discovered that the MOHELA student loan accounts were inaccurate and incomplete, or that they were not verifiable, and that MOHELA's reporting was unreliable with respect to these accounts.

73.     Had the CRAs accurately reported the results of a reasonable investigation, the CRAs would not have accepted and parroted MOHELA's response to Plaintiff's dispute.

E.  **AES/ED Student Loan Tradelines.**

74.     The CRAs are reporting 6 student loan accounts, including 5 loans with AES/ED Services of Amer and 1 loan with AES/ED South, and each account is being reported as under dispute, or in a disputed status.

75.     The 5 student loan accounts with AES/ED Services of Amer are being reported as current, in a deferred status and no negative payment history.

76.     The Plaintiff does not dispute how the CRAs are reporting these accounts.

77.     The 1 student loan account with AES/ED South is being reported as transferred, closed, with a $0.00 balance and no payment history.

78.     The Plaintiff does not dispute any of the information that the CRAs are reporting for this student loan account.

79.     Plaintiff informed the CRAs that they are inaccurately reporting these accounts as under dispute, or in a disputed status.

80.     The CRAs informed the AES/ED entities that Plaintiff disputed how the accounts were being reported.

81.     AES/ED responded to Plaintiff's dispute(s) by instructing the CRAs to continue reporting the accounts as under dispute.

82. The CRAs accepted AES/ED's response without considering the information in Plaintiff's dispute and continued reporting the student loan accounts as disputed.

83. Had the CRAs conducted a reasonable investigation it would have discovered that the AES/ED's accounts were not under dispute.

84. Had the CRAs accurately reported the results of a reasonable investigation, they would not have accepted and parroted AES/ED's response to Plaintiff's dispute.

## F.  Capital One.

84. The CRAs are reporting the Capital One account as 60-days late in April 2020.

85. The Plaintiff was never 60 days late on her Capital One account.

86. Therefore, it is inaccurate to report Plaintiff as 60-days late in April 2020.

87. Plaintiff informed the CRAs of the inaccuracies and incompleteness with Capital One's reporting and in turn, the CRAs informed Capital One of Plaintiff's dispute.

88. Capital One responded to Plaintiff's dispute by instructing the CRAs to continue reporting the account without making any corrections.

89. The CRAs accepted Capital One's response without considering the information in Plaintiff's dispute and continued reporting Capital One without making any corrections.

90. Had the CRAs conducted a reasonable investigation it would have discovered that the Capital One account was inaccurate and incomplete, or that it was unverifiable, and that Capital One was unreliable in its reporting.

91. Had the CRAs reported the accurate results of a reasonable investigation, the CRAs would not have accepted and parroted Capital One's response to Plaintiff's dispute.

## G.  Illegal Inquiries.

92. Plaintiff's credit reports list several unauthorized credit inquiries that resulted in the release of Plaintiff's credit information to Cardinal Financial and Rocket Mortgage.

93. The inquiry from Cardinal Financial on January 26, 2024 was not authorized.

94.     The Plaintiff has never applied for any credit with Cardinal Financial.

95.     The inquiries from Rocket Mortgage on January 22, 2024, January 23, 2024 and January 25, 2024 were not authorized.

96.     The Plaintiff applied for a loan with Rocket Mortgage at the beginning of the year and authorized one inquiry, which was done on January 1, 2024.

97.     Plaintiff informed the CRAs of the inaccurate inquiries they were reporting.

98.     The CRAs did not investigate Plaintiff's dispute and did not forward Plaintiff's dispute to the furnisher to investigate.

99.     The CRAs did not remove the inaccurate inquiries and did not amend Plaintiff's credit file to reflect that the inquiries were unauthorized.

100.    Equifax released Plaintiff's report to Bristol West Insurance Company on July 24, 2023, October 20, 2023 and April 9, 2024.

101.    Plaintiff does not recognize this company and has had absolutely no dealings ever with this company.

102.    She has no account with this company and did not apply for credit for them.

103.    Nor has Plaintiff received an offer of credit from them.

104.    Equifax did not provide any contact information for the company, so Plaintiff was not able to contact the company to inquire about the purpose or reason for the inquiry.

105.    Plaintiff requested Equifax provide the contact information for Bristol West Insurance Company, but Equifax failed to provide Plaintiff with the contact information.

## CAUSES OF ACTION

## COUNT I

### VIOLATIONS OF THE FCRA
### 15 U.S.C. §§ 1681e, 1681g and 1681i

106.    Plaintiff incorporates by reference the preceding paragraphs as fully stated herein.

107.     Pursuant to 15 U.S.C. § 1681e(a), CRAs are responsible for maintaining reasonable procedures designed to limit the furnishing of consumer reports for a permissible purposes.

108.     The CRAs violated § 1681e(a) by failing to maintain reasonable procedures to prevent the unauthorized release of Plaintiff's reports to Rocket Mortgage and Cardinal Finance.

109.     Pursuant to 15 U.S.C. § 1681g(a)(1), CRAs are mandated to provide a consumer with the consumer's file upon request from the consumer.

110.     Experian violated § 1681g(a)(1) by failing to provide Plaintiff with her credit report after she requested her report.

111.     Equifax violated § 1681g(a)(1) by failing to provide Plaintiff with the contact information for Bristol West Insurance Company.

112.     Pursuant to 15 U.S.C. § 1681e(b), CRAs are responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports about Plaintiff.

113.     Pursuant to 15 U.S.C. § 1681i(a)(1)(A), the CRAs had an affirmative duty to independently investigate the dispute submitted by Plaintiff.

114.     Pursuant to 15 U.S.C. § 1681i(a)(2), the CRAs were required to communicate the specifics of Plaintiff's dispute to the furnishers of the disputed information, including the forwarding of any documents provided by Plaintiff in support of that dispute.

115.     A CRAs' reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

116.     A reasonable reinvestigation clearly requires some degree of careful inquiry, and more than just a superficial inquiry.

117.    The reasonableness of a reinvestigation under the FCRA is generally a question of fact for the jury.

118.    In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), the CRAs required to review and consider the information submitted by Plaintiff.

119.    Plaintiff's dispute was clear and unambiguous as to the inaccuracies of the CRAs' reporting of the items on her report.

120.    Plaintiff provided all the relevant information necessary for the CRAs to conduct a reasonable reinvestigation, and correct the inaccuracies in its reporting.

121.    The CRAs breached their duties as described herein.

122.    If the CRAs had conducted a reasonable reinvestigation of Plaintiff's dispute, the CRAs would have reviewed and considered all of the information Plaintiff submitted in her dispute, and would have easily detected that what was being reported regarding the disputed items was factually incorrect, inaccurate, and misleading.

123.    If the CRAs had conducted a reasonable reinvestigation of Plaintiff's dispute, and pursuant to § 1681i(a)(5), the disputed items on Plaintiff's reports would have been appropriately modified (corrected) or deleted.

124.    Due to the CRAs' failures to follow reasonable procedures to assure maximum possible accuracy of information, and failures to conduct a reasonable reinvestigation of Plaintiff's dispute, the false and misleading information in Plaintiff's credit file and on Plaintiff's reports was not appropriately modified.

125.    The CRAs had all the information necessary to correct its reporting. Despite that, the CRAs failed to correct the false, disputed information, in the face of clear evidence that its reporting was false and misleading. That failure indicates that the CRAs' reinvestigation procedures were not reasonable.

126.    The fact that the CRAs had all the information necessary to correct their reporting, yet failed to do so in an appropriate manner, further indicates that the CRAs recklessly disregarded Plaintiff's dispute and the requirements of the FCRA, arising to a willful violation of the statute.

127.    Upon information and belief, the CRAs have prepared consumer reports containing the incomplete and inaccurate information at issue, and has published the incomplete and inaccurate information to third parties.

128.    The CRAs willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Plaintiff in his consumer reports, in reckless disregard of the statutory requirements and Plaintiff's dispute.

129.    The CRAs willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to properly notify the furnishers of Plaintiff's dispute, by failing to conduct a reasonable reinvestigation of Plaintiff's dispute, and by failing thereafter to appropriately modify information in Plaintiff's file and on his consumer reports, in reckless disregard of the statutory requirements, and Plaintiff's dispute.

130.    As a result of CRAs violations of 15 U.S.C. §§ 1681e(a), 1681e(b), 1681g(a) and 1681i, Plaintiff has suffered actual damages as described herein. Plaintiff is, therefore, entitled to recover actual damages from the CRAs pursuant to 15 U.S.C. §§ 1681n and 1681o.

131.    The CRAs' actions and omissions were willful, rendering them liable to Plaintiff for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

132.    Plaintiff is entitled to recover costs and attorneys' fees from the CRAs pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Ms. Azemar seeks judgment in his favor and damages against Defendants:

A.      awarding Ms. Azemar against all Defendants actual damages in an amount exceeding $75,000, statutory damages, punitive damages, costs, and reasonable attorneys' fees;

B.      ordering all Defendants to immediately delete all inaccurate information from Ms. Azemar's consumer reports and files and cease reporting the inaccurate information to any and all persons and entities to whom it reports consumer information and to send updated and corrected consumer report information to all persons and entities to whom it has reported inaccurate information about Ms. Azemar within the last three years; and

C.      any such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Ms. Azemar demands a trial by jury as to all issues so triable.

Dated: May 30, 2024                               Respectfully submitted,

Rozette Azemar (Pro Se)
3691 NW 21st Street #206
Lauderdale Lakes, FL 33311
(754) 779-3715
Rjazemar08@gmail.com